IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JONATHON L. WOODS         )
                          )
v.                        )    No. 3:05-1080
                          )    Judge Campbell/Bryant
C/O LOZER, et al.         )

To:  The Honorable Todd J. Campbell, Chief Judge

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned for a report and recommendation on whether plaintiff has exhausted his available administrative remedies regarding his claims against defendants under 42 U.S.C. § 1983 (Docket Entry No. 59). The parties were directed to brief the issue if they so desired by December 11, 2006 (Docket Entry No. 60). Defendants filed their brief on December 1, 2006 (Docket Entry No. 64). Plaintiff has not briefed the issue.

As explained below, having considered defendants' brief and the applicable law, the undersigned would recommend that plaintiff be found to have properly exhausted his administrative remedies with respect to his excessive force claim against Lozer, Garner, Werbeck, and Harris, as well as his deliberate indifference claim against Munson. The Magistrate Judge further recommends that plaintiff's claims against O'Malley and Harp, as well as his claim of deliberate indifference against Cecil and

1

Tyler, be DISMISSED without prejudice for failure to exhaust his administrative remedies.  Finally, the Magistrate Judge recommends that the Court take under advisement the issue of whether dismissal is appropriate even as to those claims which plaintiff has properly exhausted, pending the forthcoming ruling by the U.S. Supreme Court in <u>Williams v. Overton</u>, 126 S.Ct. 1463 (2006), and <u>Jones v. Bock</u>, 126 S.Ct. 1462 (2006).

### I.  Procedural History Below

Attached to their brief on the exhaustion issue, defendants filed a certified copy of plaintiff's grievance #00174965 (Docket Entry No. 64).  Plaintiff filed this grievance on November 1, 2005, less than a week after the incident wherein plaintiff was injured.  On November 2, 2005, the supervisor of the grieved correctional officers responded to the grievance, defending his charges' use of force during the incident described in the grievance.  On November 9, 2005, plaintiff was charged with and convicted of assault on staff.  Accordingly, on November 22, 2005, the inmate grievance committee determined that plaintiff's grievance was "Inappropriate per policy 501.01 VI G-1, disciplinary #634539." The warden of the prison agreed with the committee's decision, and plaintiff appealed to the Commissioner of the Tennessee Department of Correction (TDOC).  The Commissioner denied plaintiff's appeal, providing the

following explanation:

> A Disciplinary Report was issued concerning this complaint. Appealing or seeking review of procedures or punishment imposed under established disciplinary procedures of TDOC is a matter inappropriate to the grievance procedure. These issues may be appealed pursuant to TDOC Policy 502.01 Uniform Disciplinary Procedures. Any inappropriate action or behavior by staff during the processing of the Disciplinary Report should be directed to the appropriate supervisor.

The Disciplinary Report described above and plaintiff's subsequent administrative conviction were based on plaintiff's assault on defendant Werbeck. Because plaintiff chose not to appeal that conviction, but instead persisted in his attempt to grieve the actions of the correctional officers during the incident which gave rise to defendant Werbeck's injury (discussed in great detail in the undersigned's report on defendants' motion for summary judgment, Docket Entry No. 57), the prison and TDOC officials declined to consider the merits of plaintiff's grievance.

## II. Discussion

### The "Proper Exhaustion" Requirement

Under the Prison Litigation Reform Act (PLRA), a prisoner is required to exhaust all available administrative remedies before filing an action in federal district court under § 1983. 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 733 (2001); Brown v. Toombs, 139 F.3d 1102, 1103-04 (6th Cir.

3

1998). The exhaustion requirement of § 1997e(a) is "mandatory," and "prisoners must exhaust [available] grievance procedures before filing suit in federal court even though the ... remedy sought is not an available remedy in the administrative process." Wyatt v. Leonard, 193 F.3d 876, 877-78 (6th Cir. 1999).

Defendants' brief points out that plaintiff did not appeal his disciplinary conviction, but no particular argument is made with respect to how this affects the exhaustion analysis. Indeed, defendants concede that plaintiff's claims against defendants Lozer, Garner, and Werbeck were exhausted through the grievance process. However, the undersigned has considered the extent to which plaintiff's grievances may have been ineffective for exhaustion purposes, in light of the Commissioner's construction of those grievances as being inappropriately filed, and the holding of the U.S. Supreme Court in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), that "proper exhaustion of administrative remedies is necessary."

In Ngo, the Supreme Court defined the question presented as "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. The Supreme Court answered this question in the negative, specifically with reference to an inmate grievance that was untimely filed, stating

4

that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. In determining that the PLRA adopted the administrative law concept of "proper exhaustion," id. at 2387, the Supreme Court recognized that body of law's requirement of procedural propriety "'so that the agency addresses the issues on the merits.'" Id. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.), *cert. denied*, 537 U.S. 949 (2002)).

Turning to the procedural rules at issue here, it is the published policy of TDOC that "[t]he grievance process is inappropriate for ... [a]ppealing or seeking review of procedures or punishment imposed under established disciplinary procedures of the TDOC," pursuant to Policy 501.01(VI)(G)(1).[1] However, that same policy provides that "[i]f the chairperson determines a matter to be non-grievable, the grievant may appeal that decision as outlined in the handbook TDOC Inmate Grievance Procedures." The inmate handbook instructs that determinations of non-grievability are subject to the same appeals process as other grievance responses, at the conclusion of which the grievance, if sustained as inappropriate under TDOC policy, is returned to the

---

[1] http://www.state.tn.us/correction/policies/poly.html.

5

inmate.[2]

Ngo's requirement of proper exhaustion is chiefly concerned with preventing inmates from effectively bypassing the administrative process, which would have been easily done under Sixth Circuit precedent prior to Ngo simply by waiting until the grievances were untimely under prison rules.  There is no such concern here, as plaintiff's grievance was received on November 1, 2005, less than a week after the incident.  Indeed, plaintiff's grievance was filed more than a week prior to the disciplinary proceedings against him, garnering a supervisor's response on the merits before the disciplinary process was started.  Thus, there was nothing procedurally defective about plaintiff's grievance when he filed it.[3]  Moreover, the TDOC policy that certain claims or issues are inappropriate to the grievance procedure does not appear to be a "critical procedural rule," inasmuch as the decision that an issue is inappropriately grieved is itself appealable through normal grievance channels, and plaintiff justifiably relied on the inmate handbook's provision for appeal of the response to his grievance, apparently believing that to be the better course than raising Eighth

---

[2] Id.

[3] It is worth noting that Policy 501.01(VI)(G)(1) regards the grievance procedure as inappropriate only for "[a]ppealing or seeking review of procedures or punishment imposed under established disciplinary procedures of the TDOC."  (Emphasis added).  Though plaintiff's grievance and disciplinary conviction both arose from the same circumstances, he does not appear to grieve the disciplinary procedures or punishment imposed.

6

Amendment claims in a disciplinary appeal.[4]

Finally, there is nothing in this case to indicate that the substantive review of plaintiff's timely grievance, for purposes of determining grievability under TDOC Policy 501.01(VI)(G)(1), is so far removed from a review of the merits of the grievance as to prejudice the prison's ability to investigate or otherwise address plaintiff's constitutional claims. Nor are the aims of the PLRA (as discussed in Ngo) otherwise disserved by allowing plaintiff's claim to go forward. Accordingly, plaintiff's full round of grievance appeals was sufficient to exhaust his available administrative remedies, despite the official response that the subject matter of his complaint was inappropriately grieved. See Rogers v. Don, 2006 WL 241103, at *3 n.2 (W.D. Tenn. Jan. 31, 2006)("It is irrelevant [to the exhaustion issue] whether the grievance was adjudicated on the merits, on the basis of the supervisor's response, or because medical issues are not grievable. Pursuant to TDOC policy, a determination that a matter is nongrievable is itself appealable, ... and the plaintiff pursued [his appeals].").

Alternatively, plaintiff's grievance was proper because the Commissioner and other TDOC personnel misconstrued it as an

---

[4]It is no sure bet that the merits of plaintiff's claims would have been considered even if he had appealed his disciplinary conviction, inasmuch as he did not raise them during his disciplinary hearing.

7

attempt to appeal his disciplinary conviction,[5] when in fact it presents Eighth Amendment claims which the grievance board, not the disciplinary hearing officer, should have substantively reviewed. See Hardin v. Fullenkamp, 2001 WL 35816398, at *10 (S.D. Iowa June 22, 2001).[6] Consistent with the prior ruling of this Court that these Eighth Amendment claims are analytically distinct from plaintiff's disciplinary conviction,[7] and that

---

[5]Compare n.3, supra.

[6]While the court in Hardin (a case factually similar to the one at bar) did not need to decide the issue of whether the disciplinary process provided an "available" remedy which the inmate failed to exhaust, the court commented on the dubious argument that a disciplinary hearing officer should be charged with reviewing claims of constitutional violations:
> Defendants seem to be arguing that the administrative remedy available to Hardin was to raise the issue of excessive force during the disciplinary process. The purpose of prison disciplinary hearings is to ascertain if inmates have been guilty of misconduct and, if so, to impose sanctions against them. *See Wolff v. McDonnell*, 418 U.S. 539, 562, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Disciplinary hearings are part of the correctional process, and they "play a major role in furthering the institutional goal of modifying the behavior and value systems of prison inmates." *Id.* If Defendants are correct, the ALJ would have had to determine not only whether Hardin was guilty of assault, but also, if Hardin had asserted his excessive-force claims, whether officers violated the inmate's Eighth Amendment right to be free of cruel and unusual punishment. Defendants cite no authority in support of their contention that [disciplinary] proceedings provide a forum not only for ascertaining a prisoner's misconduct and imposing sanctions, but also for analyzing prisoner's claims of constitutional violations that arise out of that same factual situation as the misconduct charges.

[7]The undersigned continues to draw this distinction despite plaintiff's revelation in his recently filed affidavit that the assault charge against him was "for nothing" and was falsified in order "to cover things up..." (Docket Entry No. 62). It continues to be the case that success on plaintiff's excessive force and deliberate indifference claims would neither demonstrate the invalidity of his assault conviction nor require the restoration of his lost good time credits. Moreover, despite plaintiff's most recent filing, it still cannot be said that his amended complaint is based solely upon the allegation that the misconduct report against him was falsified (in other words, that the force used against him was excessive because he had done

8

plaintiff would therefore not be required to have successfully appealed that conviction in order to maintain his suit under § 1983, the undersigned does not believe that the viability of plaintiff's lawsuit from an exhaustion standpoint is dependent on his having *un*successfully appealed the disciplinary conviction.

### Plaintiff's Grievance

As mentioned above, though defendants address plaintiff's failure to appeal his disciplinary conviction, their argument for the dismissal of his case is based upon his failure to exhaust fully his available administrative remedies through the grievance process. They argue that while plaintiff exhausted his available administrative remedies as to defendants Lozer, Garner, and Werbeck through the grievance process, his grievance failed to mention the other named defendants. Upon reviewing the grievance documents provided by both parties (Docket Entry Nos. 1 and 64),[8] the undersigned must conclude that plaintiff has indeed

---

nothing wrong at all). While plaintiff will plainly not be allowed to relitigate the circumstances which produced the injury to defendant Werbeck, or otherwise present his case in any way which would necessarily imply the invalidity of his assault conviction, the rule of Heck v. Humphrey, 512 U.S. 477 (1994), Huey v. Stine, 230 F.3d 226 (6th Cir. 2000), and the like does not bar his Eighth Amendment claims based on events which allegedly transpired after defendant Werbeck sustained her injury. See Hardin, 2001 WL 35816398 at *11-14 (applying Huey to determine that the claims not founded solely on an allegation that a misconduct report was falsified, or as to which the foundation is unclear, are not Heck-barred).

[8]A comparison of the original grievance documents filed by plaintiff in support of his complaint (Docket Entry No. 1) and the carbon copies filed by defendants in support of their position on exhaustion (Docket Entry No. 64), reveals that the originals filed by plaintiff have been edited. As submitted to prison officials, plaintiff's grievance did not name Tyler, O'Malley, or Harp. Plaintiff appears to have written in these names on the original

9

failed to exhaust as to four of the nine named defendants.

Plaintiff's amended complaint contains claims of excessive force against defendants Lozer, Garner, Werbeck, Harris, O'Malley, and Harp; it contains claims of deliberate indifference to his safety and/or serious medical needs against O'Malley, Munson, Cecil, and Tyler. (Docket Entry No. 18). Plaintiff grieved the actions and/or failure to act of six correctional officers, three of whom were alleged to have done the damage to plaintiff while the other three watched. Defendants Lozer, Werbeck, Garner, Munson, and Harris are identified in the grievance, along with "the unknown officer," who appears from plaintiff's edited grievance copy to have been either O'Malley or Harp. Defendant Cecil,[9] who is alleged to be an internal affairs officer, is mentioned in the grievance as having witnessed the scene of the incident -- including the alleged pool of plaintiff's blood -- after it happened, and is charged with failing to take pictures of the scene. Lastly, defendant Tyler is alleged to have come on the scene after plaintiff had been injured and restrained, having been notified

---

grievance after it was returned to him by prison officials, and prior to the filing of this lawsuit. In that plaintiff had grieved the action/inaction of an "unknown officer," the undersigned presumes that the alterations were made as a good faith attempt to clarify identities, rather than as a fraudulent maneuver to inflate the impact of his claims.

[9]Though the undersigned has not found clarification on the record, it appears from the pleadings that defendant "V. Cecil" is now known as Valerie Hampton.

10

of the incident by radio communication from defendant Lozer.

Regarding the content of an inmate's grievance, the Sixth Circuit instructs that the grievance "must identify each defendant eventually sued." Bell v. Konteh, 450 F.3d 651, 653 (6th Cir. 2006)(citing Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Neither O'Malley nor Harp were named in plaintiff's grievance as filed. Moreover, one or the other of these defendants is unaccounted for (and not simply unnamed) in plaintiff's grievance, which in two places specifically notes that there were six correctional officers aside from internal affairs officer Cecil and Captain Tyler. Even assuming plaintiff would have been able to preserve his right to sue the sixth correctional officer whose identity was unknown to plaintiff during the grievance process,[10] it cannot be determined from the amended complaint or otherwise whether it is O'Malley or Harp who fits that bill. In light of this failure of plaintiff's grievance to identify either officer by name, and to identify one of the two as even being present, the undersigned must conclude that the claims against both defendants O'Malley and Harp are unexhausted.

---

[10] See Thomas v. Woolum, 337 F.3d 720, 734 (6th Cir. 2003), *overruled on other grounds*, 126 S.Ct. 2378 (2006)("Although an inmate need not identify each officer by name when the identities of the particular officers are unknown, Thomas here knew one on-looking officer's identity and knew that others had watched the beating as well. Accordingly, his grievance form should have noted either the other officers' names or the fact that other officers had seen the beating.").

11

As to the other seven defendants, all named in plaintiff's grievance, plaintiff "'...must have alleged mistreatment or misconduct on the part of the defendant' in his grievance." Konteh, 450 F.3d at 654 (quoting Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003)). This standard was described by the Konteh court as "relaxed" and "not a particularly strict one," id., and was explained by the Burton court as follows:

> In describing the alleged mistreatment or misconduct, ... we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

321 F.3d at 575. Under this standard, it is clear that the excessive force claims against defendants Lozer, Garner, Werbeck, and Harris were properly exhausted, as the grievance alleges that all six correctional officers were pulling on his arm trying to break it, and further alleges other use of force by Lozer, Garner, and Werbeck. However, it appears that the deliberate indifference claims against defendants Cecil and Tyler were not adequately grieved, even under the relaxed standard set out above, in that the grievance merely claims that they witnessed the scene of the incident after the fact, including the pool of plaintiff's blood and the severity of the cut on plaintiff's arm, without calling a "code" or taking any pictures. The grievance

12

does not charge Cecil or Tyler with delaying medical attention to plaintiff's injuries, but appears to charge them with a failure to document, investigate, or otherwise follow protocol with respect to this incident involving an assault. These allegations will not suffice to exhaust plaintiff's claim of deliberate indifference to plaintiff's safety or serious medical needs, as against defendants Cecil and Tyler. With respect to the claim of deliberate indifference against defendant Munson, plaintiff's grievance sufficiently alleges that she was present during the incident and that she watched and smiled, failing to come to plaintiff's aid.

In sum, the undersigned must conclude that plaintiff has failed to exhaust any claims against O'Malley and Harp. He has likewise failed to exhaust his deliberate indifference claim against Cecil and Tyler. The claims which plaintiff has properly exhausted are his excessive force claim against Lozer, Garner, Werbeck, and Harris, as well as his deliberate indifference claim against Munson.

### Partial vs. Full Exhaustion

Defendants cite the case of <u>Jones-Bey v. Johnson</u>, 407 F.3d 801 (6th Cir. 2005), *reh'g en banc denied* (Oct. 12, 2005), for the proposition that full exhaustion of all claims against all defendants is required in the Sixth Circuit, and that anything less than full exhaustion subjects the entire case to

13

dismissal without prejudice.  Defendants' brief does not recognize the split of authority within the Sixth Circuit on this topic, perhaps leaving it to the Jones-Bey dissent to describe the standard of partial exhaustion that had been applied in earlier published decisions, and that continues to be applied by some panels of the Sixth Circuit and some district courts within the circuit.  E.g., Bouchard, 449 F.3d at 726.  Under the partial exhaustion rule applied (if not pronounced) by the court in Hartsfield v. Vidor, 199 F.3d 305 (6th Cir. 1999), claims that had been exhausted as to any particular defendant(s) were allowed to proceed as to the named defendant(s), while unexhausted claims were subject to dismissal.  A subsequent Sixth Circuit panel, describing Hartsfield, stated as follows:

> Thus, the *Hartsfield* holding illustrates that a prisoner's lawsuit, which alleges multiple claims against multiple defendants, is not vulnerable to dismissal under § 1997e(a) simply because the prisoner has failed to exhaust a particular claim as to a specific defendant.

Burton v. Jones, 321 F.3d at 575 n.2.

Thus, while the Jones-Bey panel in 2005 deemed the issue of partial versus full exhaustion to be an open question in the circuit, and proclaimed full exhaustion to be the law of the circuit from that point forward, the circuit in fact remains divided on the issue.

However, though the Sixth Circuit passed on the chance to review the issue *en banc* in Jones-Bey, the U.S. Supreme Court

14

is presently considering this exhaustion issue in an attempt to resolve a similar split among the circuit courts of appeal. Williams v. Overton, 126 S.Ct. 1463 (2006); Jones v. Bock, 126 S.Ct. 1462 (2006). Under either view of the exhaustion requirement, it is clear that the unexhausted claims identified above should be dismissed without prejudice, and the undersigned so recommends. Since there are no further pretrial proceedings to be had with respect to the exhausted claims identified above; since the Supreme Court heard argument in Williams and Jones on October 30, 2006; and since this Court in a recent order continued the trial of the instant case until May 15, 2007 (Docket Entry No. 71), it is the recommendation of the undersigned that, with respect to the remaining, exhausted claims, the Court take the "full versus partial" exhaustion issue under advisement until the law is clarified by the Supreme Court.

### III. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff be found to have exhausted his administrative remedies with respect to his excessive force claim against Lozer, Garner, Werbeck, and Harris, as well as his deliberate indifference claim against Munson. The Magistrate Judge further recommends that plaintiff's claims against O'Malley and Harp, as well as his claim of deliberate indifference against

15

Cecil and Tyler, be DISMISSED without prejudice for failure to exhaust his administrative remedies. Finally, the Magistrate Judge recommends that the Court take under advisement the issue of whether dismissal is appropriate even as to those claims which plaintiff has properly exhausted, pending the forthcoming ruling by the U.S. Supreme Court in <u>Williams v. Overton</u>, 126 S.Ct. 1463 (2006), and <u>Jones v. Bock</u>, 126 S.Ct. 1462 (2006).

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 3rd day of January, 2007.

        s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE